**Valerie THOMAS, et al., Appellees/Cross-Appellants,**

v.

**NATIONAL FOOTBALL LEAGUE PLAYERS ASSOCIATION, Appellant/Cross-Appellee.**

Nos. 96–7242, 96–7243.

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 13, 1997

Decided Dec. 19, 1997

As Vacated in Part on Rehearing Feb. 25, 1998

Joseph A. Yablonski argued the cause for appellant/cross-appellee, with whom Charles R. Both and Richard A. Berthelsen, Washington, D.C, were on the briefs.

David L. Rose argued the cause and filed the briefs for appellees/cross-appellants.

Before: EDWARDS, Chief Judge, GINSBURG, Circuit Judge and BUCKLEY, Senior Circuit Judge.

Opinion for the Court filed by Chief Judge EDWARDS.

HARRY T. EDWARDS, Chief Judge:

A principal claim in this case is that the defendant, acting pursuant to "mixed motives," unlawfully retaliated against the plaintiffs in violation of Title VII, 42 U.S.C. § 2000e *et seq.* (1994). The issues on appeal require us to delimit the requirements of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), and *Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), with respect to a plaintiff's *prima facie* case, a defendant's burden of production, and the ultimate burdens of persuasion, in a retaliation/mixed-motives case.

The actions giving rise to this law suit occurred when Eugene Upshaw, Executive Director of the National Football League Players Association ("NFLPA"), first laid off, then terminated employees Valerie Thomas and Rita Raymond on the stated grounds that they had been disloyal in criticizing NFLPA staff and policies in an anonymously distributed document and in several legally taped telephone calls. Julie Taylor–Bland (Bland at the time of the events) resigned in the aftermath of the firing of the other two. Before leaving the employ of the NFLPA, Thomas and Bland had suggested, in conversations with management, that NFLPA promotion policy discriminated against African–American women. The three women subsequently sued the NFLPA, charging that the lay-off and discharge of Thomas and Raymond, and the alleged constructive discharge of Bland, came in retaliation to their opposition to discriminatory employment practices, and hence violated Title VII.

After trial, the District Court granted judgment as a matter of law to the NFLPA on the plaintiffs' claim that there existed a pattern and practice of discrimination at the NFLPA. Joint Appendix ("J.A.") 902–09. It then found that Thomas had been unlawfully fired, that Raymond had not made out a *prima facie* case of retaliation, and that Bland had not been fired at all. The trial court granted Thomas back pay and prejudgment interest, but declined to reinstate her. *Thomas, et al., v. National Football League Players Ass'n,* No. 91–3332 (D.D.C. Jul. 24, 1996), *reprinted in* J.A. 279. The NFLPA now appeals the decisions adverse to it; Thomas, Raymond, and Bland cross-appeal the decisions adverse to them.

We affirm the District Court's judgment on the merits as to Thomas, Raymond, and Bland's claims. The District Court properly considered the evidence before it and correctly apportioned burdens of production and persuasion in this mixed-motives case. We reverse and remand the grant of prejudgment interest to Thomas. On remand, the District Court should reconsider the grant of prejudgment interest for the period of delay during which the plaintiffs repeatedly amended their complaint. Finally, the District Court apparently erred in computing "fringe benefits" in connection with back pay awarded to Thomas; we therefore remand for reconsideration on this point.

## I. BACKGROUND

In 1988, Thomas, Raymond, and Bland worked for the NFLPA and belonged to Office and Professional Employees International Union, Local 2 ("Local 2"). After the NFLPA's unsuccessful strike against the owners during the 1987 season, the NFLPA's finances suffered, and NFLPA Executive Director Upshaw devised a new budget for the NFLPA which sought to reduce personnel costs through attrition. J.A. 281. The board of directors of the NFLPA met during the first week of March 1988, and elected George

Martin president and Mike Davis vice president. The board declined to adopt Upshaw's proposed budget, instead demanding a ten percent reduction in personnel costs by layoff. *Id.*

After a banquet held in conjunction with the board meeting, Martin convened an informal gathering in his hotel room that included Thomas and Bland. Thomas and others complained about promotional opportunities for African–Americans and women in the Local 2 bargaining unit. J.A. 282. Some time after March 10, 1988, Martin organized a second meeting, which Thomas and Bland also attended. Similar concerns were raised, and someone present accused Upshaw of racism. *Id.*

In the weeks that followed, Martin and Davis conducted personal and telephone interviews with staff on a range of employment-related subjects. Interviewees were assured of confidentiality. In their interviews, Thomas and Bland expressed views on race and sex discrimination at the NFLPA. Davis also interviewed Raymond. J.A. 283. Around the same time, Upshaw implemented the NFLPA board's directive to lay off some employees to cut costs. Prior to the lay-offs, Upshaw heard from Davis that Thomas and Raymond had criticized various employees in telephone conversations with Davis, and were suspected of producing and circulating a document harshly critical of the NFLPA. The document was headed and referred to as "What every player should know about the NFLPA." It included, among other allegations, a variety of claims about unfair promotion practices at the NFLPA. J.A. 285–86. It did not include allegations of racial discrimination.

On March 18, 1988, Upshaw laid off six employees, among whom were Thomas and Raymond. When Thomas returned to her office after learning of the lay-offs, she discovered workers changing the locks on her door and shutting down her computer. J.A. 284. At a time proximate to the lay-offs, Martin undertook to investigate the employees' allegations of misconduct at the NFLPA, and asked Upshaw about minority issues at the NFLPA. Martin told Upshaw that Thomas had called him a racist and had complained about promotion of African–Americans and women. *Id.* Martin and Davis each gave copies of the "What every player should know" memorandum to Upshaw. Davis told Upshaw about his telephone conversations with Thomas and Raymond and that Raymond had mailed him a copy of the memorandum. *Id.*

On March 23, 1988, Davis gave Upshaw tapes of his telephone conversations with Thomas and Raymond. According to Upshaw's uncontradicted testimony, the conversations included *ad hominem* attacks on various NFLPA employees, including Upshaw. On the tapes, Raymond promised to send a copy of the "What every player should know" memorandum to Davis. Upshaw concluded that Thomas and Raymond had written the memo.

On April 12, 1988, five of the six employees laid off on March 18 were fired for cause. Upshaw sent each employee an identical letter explaining the firing on the grounds that the employees had libeled and slandered NFLPA personnel; had violated confidentiality; and had shown disloyalty towards and intentionally embarrassed the NFLPA. J.A. 286. Upshaw later testified that he fired Thomas and Raymond for what he believed they had said and written about the NFLPA employees. Some weeks later, Bland asked Upshaw about a newly open paralegal/secretary position, and Upshaw told her that he "did not see her in the job"; on May 20, 1988, Bland resigned. J.A. 287.

Local 2 pursued grievances against the NFLPA on behalf of Thomas and Raymond. The grievances were appealed to arbitration and an arbitrator ruled that the two had been dismissed without just cause. The arbitrator's award ordered reinstatement, Plaintiffs' Trial Exhibits ("P.X.") 77, but the NFLPA failed to comply. Thomas, Raymond, and Bland also filed timely charges with the Equal Employment Opportunity Commission ("EEOC"), which, after some delay, issued "no cause" determinations on all their claims. At trial, the District Court

dismissed as a matter of law plaintiffs' claim of a pattern and practice of discrimination. J.A. 902–09. It found for Thomas and awarded her back pay, without reinstatement, with prejudgment interest for twenty-one months after her firing, based on expert testimony that estimated the time it should have taken Thomas to find new employment. The District Court found against Raymond, who did not appear at trial. Finally, the District Court found that Bland had not been constructively discharged.

## II. ANALYSIS

### A. Burdens of Pleading, Production, and Persuasion Under Title VII

Title VII makes it unlawful to retaliate against an employee who "has opposed any practice made an unlawful practice" by the statute. 42 U.S.C. § 2000e–3(a). The legal framework for analyzing retaliation claims under Title VII is as follows.

As in all Title VII cases, the plaintiff must first make out a *prima facie* case of unlawful employment action. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). Where retaliation is alleged, a *prima facie* case requires a showing that (1) plaintiff engaged in protected activity, (2) plaintiff was subjected to adverse action by the employer, and (3) there existed a causal link between the adverse action and the protected activity. *Mitchell v. Baldrige*, 759 F.2d 80, 86 (D.C.Cir.1985). A rebuttable presumption of unlawful discrimination arises when a plaintiff makes out a *prima facie* case. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981). The defendant may rebut the presumption by asserting a legitimate, non-discriminatory reason for its actions. The defendant's responsibility at this stage has been characterized as a "burden of production," because the ultimate burden of persuasion remains with the plaintiff. *See id.* at 255, 101 S.Ct. at 1094–95.

When a defendant satisfies the burden of production, the presumption of discrimination dissolves; however, the plaintiff still has the opportunity to persuade the trier of fact that the defendant's proffered reason was not the actual or sole basis for the disputed action. The plaintiff may aim to prove that a discriminatory motive was the only basis for the employer's action, or the plaintiff may seek to show that the employer was motivated by both permissible and impermissible motives. The plaintiff often will—quite reasonably—argue both alternatives. *See Price Waterhouse v. Hopkins,* 490 U.S. 228, 247 n. 12, 109 S.Ct. 1775, 1789 n. 12, 104 L.Ed.2d 268 (Brennan, J.) ("Nothing in this opinion should be taken to suggest that a case must be correctly labeled as either a 'pretext' case or a 'mixed-motives' case from the beginning in the District Court; indeed, we expect that plaintiffs often will allege, in the alternative, that their cases are both."). Where a plaintiff argues that discriminatory motivation constituted the only basis for the employer's action, the plaintiff may persuade the trier of fact of the pretextual nature of the defendant's asserted reason "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095.

Where, on the other hand, the plaintiff argues that the action resulted from mixed motives, a slightly different model operates. A plaintiff asserting mixed motives must persuade the trier of fact by a preponderance of the evidence that unlawful retaliation constituted a substantial factor in the defendant's action. *Price Waterhouse,* 490 U.S. at 276, 109 S.Ct. at 1804 (O'Connor, J., concurring); *id.* at 259, 109 S.Ct. at 1795 (White, J., concurring). When the plaintiff successfully shows that an unlawful motive was a substantial factor in the employer's action, the defendant may seek to prove in response that it would have taken the contested action even

absent the discriminatory motive. *See id.* at 244–45, 109 S.Ct. at 1787–88 (Brennan, J.). If the defendant fails to persuade the trier of fact by a preponderance of the evidence that it would have taken the action even absent the discriminatory motive, the plaintiff will prevail. *See id.* at 276, 109 S.Ct. at 1804 (O'Connor, J., concurring).

This burden on a defendant in a mixed-motives case has been characterized both as an affirmative defense, *id.* at 246, 109 S.Ct. at 1788 (Brennan, J.) and as a shifting burden of persuasion, *id.* at 274, 109 S.Ct. at 1803 (O'Connor, J., concurring). The question of characterization is "semantic," and need not be definitively resolved. *See id.* at 259, 109 S.Ct. at 1795 (White, J., concurring). What is noteworthy, however, is that under *Price Waterhouse* a defendant who is guilty of acting pursuant to an unlawful motive may nonetheless escape liability by proving that it would have made the same decision in the absence of the unlawful motivation.[1] In short, the ultimate burden of persuasion as to the facts constituting the defense properly falls on the defendant in a mixed-motives case, because the plaintiff has proven that unlawful motivation constituted a substantial factor in the defendant's action. "[W]here a plaintiff has made this type of strong showing of illicit motivation, the factfinder is entitled to presume that the employer's discriminatory animus made a difference to the outcome, absent proof to the contrary from the employer." *Price Waterhouse*, 490 U.S. at 276, 109 S.Ct. at 1804 (O'Connor, J., concurring).

## B. *Appellant's Claims*

### 1. *Meaning and Requirement of Direct Evidence*

■ Appellant NFLPA, the defendant below, argues that, under *Price Waterhouse*, the burden of persuasion shifts to the defendant only where the plaintiff has provided "direct" rather than "inferential" evidence of

discriminatory animus. Brief for Appellant 26. We reject this contention. Under *Price Waterhouse*, the burden of persuasion shifts to the defendant when the plaintiff has shown by a preponderance of "any sufficiently probative direct or indirect evidence" that unlawful discrimination was a substantial factor in the employment decision. *White v. Federal Express Corp.*, 939 F.2d 157, 160 (4th Cir.1991).

Appellant's suggestion results from confusion that has arisen regarding the meaning of the word "direct" in Justice O'Connor's concurring opinion in *Price Waterhouse*, 490 U.S. at 275, 276, 277, 109 S.Ct. at 1803–04, 1804, 1804–05 (O'Connor, J., concurring). As an initial matter, it should be noted that Justice O'Connor's concurrence was one of six votes supporting the Court's judgment (four Justices comprised the plurality, and Justice White filed a separate concurrence), so that it is far from clear that Justice O'Connor's opinion, in which no other Justice joined, should be taken as establishing binding precedent. Justice White's concurring opinion makes no mention of "direct" evidence, *see* 490 U.S. at 258–60, 109 S.Ct. at 1794–96, nor does the plurality opinion written by Justice Brennan. Furthermore, and more importantly, Justice O'Connor's opinion clearly indicates that the crucial prerequisite for burden-shifting is that the evidence adequately establish that discriminatory motive played a "substantial" role in the employment decision. The opinion repeatedly describes the required impact of the discrimination as "substantial." *See* 490 U.S. at 271, 272, 274, 276, 277, 278, 109 S.Ct. at 1801–02, 1802, 1803, 1804, 1804–05, 1805. Justice White, in his concurrence, also focuses on the substantial factor requirement. *See id.* at 259, 109 S.Ct. at 1795 ("As Justice O'Connor states, [plaintiff's] burden was to show that the unlawful motive was a *substantial* factor in the adverse employment action."). The emphasis of Justice O'Connor's opinion is on the substantial factor requirement, not on the distinction between types of evidence.

---

1. In 1991, Congress amended Title VII to provide that, in the situation where there is a finding of discriminatory motive and also a finding that the firing would have occurred even absent discrimination, the trial judge has discretion to grant some limited forms of relief: injunctive or declaratory relief, and attorney's fees, but not damages. 42 U.S.C. § 2000e–5(g)(2)(B).

In our view, Justice O'Connor's invocation of "direct" evidence is not intended to disqualify circumstantial evidence nor to require that the evidence signify without inference. In context, the notion of "direct" evidence in Justice O'Connor's concurrence means only that the evidence marshaled in support of the substantiality of the discriminatory motive must actually relate to the question of discrimination *in the particular employment decision,* not to the mere existence of other, potentially unrelated, forms of discrimination in the workplace. Indeed, Justice O'Connor relies on circumstantial evidence in *Price Waterhouse* to show that the employer's discriminatory motive played a substantial role in the disputed employment decision. The decisionmakers who denied Ann Hopkins a partnership never admitted or stated expressly that the action was based on her gender. Rather, the Court cites gender-related, stereotyping evaluations and comments made by some partners as suggesting to the factfinder that gender played a role in the denial. *See* 490 U.S. at 235–37, 109 S.Ct. at 1782–84.

In dicta in her concurrence, Justice O'Connor describes several pieces of evidence that, taken alone, would not show that discrimination had formed a substantial factor in the employment decision, including "stray remarks in the workplace," statements by people who did not participate in the decision-making process, or expert testimony that an illegitimate factor "play[ed] a role" in the decision. *Id.* at 277, 109 S.Ct. at 1805. In contrast to such evidence, Justice O'Connor says, "[w]hat is required is what Ann Hopkins showed here: direct evidence that decision makers placed substantial negative reliance on an illegitimate criterion in reaching their decision." *Id.* The word "direct" in this sentence simply distinguishes evidence that shows that an unlawful consideration constituted a substantial factor *in the particular employment* decision from evidence insufficiently related to the particular event.

The "direct" evidence to which Justice O'Connor alludes certainly may be circumstantial in nature, so long as it establishes that discriminatory motive played a substantial role in the employment decision. *See Griffiths v. CIGNA Corp.,* 988 F.2d 457, 470 (3rd Cir.1993) (circumstantial evidence may shift burden if it "directly reflect[s]" the alleged discriminatory attitude). Furthermore, such evidence—like all evidence short of outright admission of discriminatory motive—requires the factfinder to draw inferences. *See Ostrowski v. Atlantic Mut. Ins. Cos.,* 968 F.2d 171, 182 (2nd Cir.1992) (burden shifting requires "evidence of conduct or statements by persons involved in the decisionmaking process that may be viewed as directly reflecting the alleged discriminatory attitude, and that ... is sufficient *to permit the factfinder to infer* that the attitude was more likely than not a motivating factor in the employer's decision") (emphasis added); *Radabaugh v. Zip Feed Mills, Inc.,* 997 F.2d 444, 449 (8th Cir.1993) (quoting *Ostrowski*).

As this court recently noted, "the distinction between direct and circumstantial evidence has no direct correlation with the strength of [a] plaintiff's case." *Crawford–El v. Britton,* 93 F.3d 813, 818 (D.C.Cir.1996) (*en banc*), *cert. granted,* —— U.S. ——, 117 S.Ct. 2451, 138 L.Ed.2d 210 (1997) (No. 96–827). The purported distinction between "circumstantial" or "inferential" and "direct" evidence urged here does not make logical sense, because the decision to shift the burden of persuasion properly rests upon the strength of the plaintiff's evidence of discrimination, not the contingent methods by which that evidence is adduced. Such a distinction is incompatible with both the facts and the logic of *Price Waterhouse.*

Burden-shifting under *Price Waterhouse* requires "evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision." *Fuller v. Phipps,* 67 F.3d 1137, 1142 (4th Cir.1995). This formulation should be read carefully; evidence may "bear directly" on a decision without referring to it specifically. Nonetheless the quotation from *Fuller* correctly clarifies that "direct" describes a relationship between proof and incidents and not a characterization of the proof itself.

A number of other circuits have concluded, correctly in our view, that there is no bar on using circumstantial or inferential evidence to shift the burden of persuasion under *Price Waterhouse.* *See Griffiths,* 988 F.2d at 470 (3rd Cir.1993); *Radabaugh,* 997 F.2d at 449 (8th Cir.1993); *Ostrowski,* 968 F.2d at 182 (2nd Cir.1992); *White,* 939 F.2d at 160 (4th Cir.1991). Some have understood "direct" evidence as a requirement of *Price Waterhouse,* and have remained silent as to the precise meaning of the term, never expressly construing it as the opposite of circumstantial or inferential evidence. *See, e.g., Jackson v. Harvard Univ.,* 900 F.2d 464, 467 (1st Cir. 1990); *Gagne v. Northwestern Nat'l Ins. Co.,* 881 F.2d 309, 315 (6th Cir.1989). Several circuits have both taken Justice O'Connor's concurrence as the rule of *Price Waterhouse* and have interpreted "direct" to mean non-inferential or non-circumstantial. *See, e.g., Brown v. East Mississippi Elec. Power Ass'n,* 989 F.2d 858, 861 (5th Cir.1993); *Heim v. Utah,* 8 F.3d 1541, 1547 (10th Cir.1993); *EEOC v. Alton Packaging Corp.,* 901 F.2d 920, 923 (11th Cir.1990). For the reasons set forth above, we believe that the few circuits that have taken Justice O'Connor's use of the word "direct" to mean non-inferential or non-circumstantial have misread her concurring opinion and misconstrued the rule of law to be drawn from *Price Waterhouse.*

### 2. *Defendants Notice of the Shifting Burden of Persuasion*

■ The NFLPA next argues that a defendant must somehow receive "notice" before the District Court that the burden of persuasion has shifted to it under the mixed-motives model of the case. Appellant's claim depends on a mistakenly formalistic conception of the order and allocation of proof in Title VII cases. It is true that a written synthesis of the case law describing tests and burdens for assessing a Title VII retaliation claim gives the appearance of an algorithm. The law has developed in this way for good reason: when a district court articulates its reasoning in a Title VII case, it benefits from conscientiously completing the analytic steps required by the Supreme Court. The steps of the analysis aim to assure compliance with the law and uniformity in its application. This is not to say, however, that the case law aims to stifle the parties in the course of litigation. It is quite the contrary.

■ Pleadings in the alternative, vagaries of evidence, and the general disorderliness of testimonial narrative all ensure that various elements of proof do not present themselves to the trial court in a regimented fashion. For this reason, the Title VII algorithm need only govern the trial court's assessment of the evidence, not the precise order in which that evidence is presented. What the Supreme Court has said of the *prima facie* case approach of *McDonnell Douglas* applies as forcefully to the entire Title VII framework: it was "never intended to be rigid, mechanized, or ritualistic. Rather, it is merely a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination." *Furnco Constr. Corp. v. Waters,* 438 U.S. 567, 577, 98 S.Ct. 2943, 2949–50, 57 L.Ed.2d 957 (1978). The Title VII algorithm was designed to clarify the question of whether discrimination occurred, not "to make [courts'] inquiry even more difficult." *United States Postal Serv. Bd. of Governors v. Aikens,* 460 U.S. 711, 716, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983). Thus, it is ridiculous to suggest, as the NFLPA does here, that a trial court must give some kind of "notice" to a defendant during the course of a trial as soon as it appears that the burden of persuasion has shifted. Professional football games may be played in clearly defined "quarters," but we do not litigate Title VII claims in this way.

Furthermore, the argument that a defendant might somehow suffer prejudice absent notice of burden-shifting makes little sense in light of the normal progress of Title VII litigation. If a defendant has evidence tending to show that it would have discharged the

plaintiff notwithstanding any discriminatory motive, it would be foolish not to introduce this evidence under its *Burdine* burden of production to rebut the *prima facie* case of discrimination. The defendant would introduce this evidence regardless of whether the case fell under the *Burdine* rubric of single reason or the *Price Waterhouse* rubric of mixed motives. Where the factfinder concludes that the employer's decision resulted from mixed motives, it will consider the self-same exculpatory evidence as a proffered refutation of the argument that discrimination constituted a substantial factor in the employment decision. As a result, the parties will normally litigate the defendant's claim fully, as indeed occurred in the case before us. Accordingly, we conclude that no formal notice of burden-shifting is required under *Price Waterhouse*.

### C. *District Court Decision on the Merits*

 The District Court in the case at bar correctly followed the Title VII algorithm in assessing the evidence before it. It found that Thomas engaged in protected activity by participating in two conversations with Martin in which she raised the issue of discrimination against women and African–Americans in promotion at the NFLPA, and by distributing the memo to Martin. J.A. 289–90. The District Court found that the NFLPA fired Thomas "immediately following" the protected activity, and permissibly concluded that Thomas had made out a *prima facie* case. Because it did not find evidence that Raymond engaged in protected conduct, the District Court correctly found that Raymond had not made out a *prima facie* case.. J.A. 291–92. The District Court further found that Bland was not constructively discharged, because she had not presented evidence of aggravating factors making her work intolerable. J.A. 292–93; *see Dashnaw v. Pena*, 12 F.3d 1112, 1115 (D.C.Cir.1994). Neither of these conclusions was clearly erroneous; the legal framework for both was correct.

The District Court then assessed the evidence that served to refute the NFLPA's claim that it had non-discriminatory reasons

sufficient to fire Thomas. It found that the way in which the firing followed Upshaw's learning of Thomas's taped comments; the unusual security measures surrounding the firing; and Upshaw's possession of the memorandum which he believed Thomas had co-authored sufficed to prove that Thomas's firing was motivated "in substantial measure" by her protected activity. J.A. 291. This constituted an acceptable finding of mixed motives, and was not clearly erroneous. Although the District Court did not cite *Price Waterhouse*, it correctly concluded that the burden of persuasion had shifted, and that as a result "it was NFLPA's burden to demonstrate that Thomas would have been discharged regardless of her protected activity." *Id.* In the District Court's view, "the NFLPA failed to sustain that burden" in that it did not successfully separate permissible from impermissible motives in its decision. *Id.* This conclusion was not clearly erroneous, either, but reflected the factfinder's assessment of the evidence surrounding the firing.

 Appellant urges that even if the burden did shift to it, it established adequately that it would have fired Thomas regardless of her protected actions, because it fired other employees who did not engage in protected activity. This argument, which the NFLPA calls a "syllogism," Brief for Appellant 30, is thoroughly defective. It is a *non sequitur* to argue that if an employer fires several employees with legal motivation, all other firings that occur simultaneously also acquire the color of legality. The NFLPA could have retaliated against Thomas for protected activity, and then fired other employees at the same time either to mask its retaliation or in a corporate fit of pique.

### D. *Rejection of Statistical Evidence*

 The District Court correctly ruled as a matter of law that plaintiffs did not make out a *prima facie* statistical case of a pattern and practice of discrimination on the part of the NFLPA. The crucial basis for this ruling was that plaintiffs' expert did not consider the relevant qualifications of those passed

over or approved for promotion. J.A. 906–07. A *prima facie* case of statistical disparity must include the minimum objective qualifications of the applicants. *Palmer v. Shultz*, 815 F.2d 84, 91 n. 6 (D.C.Cir.1987); *Segar v. Smith*, 738 F.2d 1249, 1274 (D.C.Cir.1984). Here, the expert did not account for minimum qualifications. Indeed, he could not have done so, because Appellees never specifically requested qualification standards from Appellant in discovery. We need not reach the District Court's other reasons for dismissal, because even if the trial court had found adequate sample size and statistical significance (which it did not, J.A. 906–07), a non-discriminatory, qualifications-based reason for the disparate impact could have existed. The District Court properly dismissed the statistical case as insufficient as a matter of law.

### E. *The Relief*

The District Court awarded Thomas back pay from the date of her firing to December 1989, by which time, it found, she should have secured employment. J.A. 294–97. The District Court did not abuse its discretion in weighing expert testimony regarding job availability to arrive at this time period.

In computing the award on reconsideration, the District Court used a form prepared by plaintiffs' expert, labeled Attachment C3, which computed fringe benefits for 1988 and 1989 as $6,173 and $8,305 respectively. J.A. 310. However, in his testimony, the expert certified a different version of this form, labeled Attachment C1, Version 3, J.A. 313, P.X. 375, as accurate and as the basis for his estimates. *See* J.A. 689–90, 752. This second form gives fringe benefits for 1988 and 1989 as $2,685 and $3,767. The District Court apparently erred by using the wrong document in its damage computation; we remand for correct computation of damages or for explanation.

■ The District Court did not abuse its discretion in declining to reinstate Thomas. Although the acrimony of litigation alone probably would not suffice to rule out reinstatement, *see Dickerson v. Deluxe Check Printers, Inc.*, 703 F.2d 276, 281 (8th Cir. 1983), the District Court's denial of reinstatement reflected its own observation that some of Thomas's actions "might well have warranted discharge." J.A. 291. The District Court reasonably concluded that reinstatement would not serve the interests of justice where the employee engaged in behavior that could conceivably have given rise to a legitimate discharge under other circumstances.

■ The District Court awarded Thomas prejudgment interest on the back pay. The presumption strongly favors prejudgment interest, *Barbour v. Merrill*, 48 F.3d 1270, 1278–79 (D.C.Cir.1995), but the trial court may disallow interest where attributable to substantial, unexplained delay by the plaintiff. *See Williamson v. Handy Button Mach. Co.*, 817 F.2d 1290, 1298 (7th Cir. 1987). Although Thomas reasonably awaited the EEOC's disposition of her request for a right to sue letter, which was delayed through no fault of her own, the same cannot be said of the three-year period during which Thomas and her co-plaintiffs repeatedly amended their complaint. The District Court must reconsider this issue on remand.

### III. CONCLUSION

For the foregoing reasons, the judgment of the District Court is affirmed regarding Thomas, Raymond, and Bland. The judgment is reversed and the case remanded on the questions of computation of damages, and granting of prejudgment interest.

*So ordered.*