THAMES TALENT, LTD. *v.* COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES ET AL.
(SC 16768)

Sullivan, C. J., and Norcott, Palmer, Vertefeuille and Zarella, Js.

Argued November 25, 2002—officially released August 5, 2003

*Eric R. Posmantier*, with whom, on the brief, was *Andrew P. Nemiroff*, for the appellant (plaintiff).

*Alix Simonetti*, assistant commission counsel, with whom were *Philip A. Murphy, Jr.*, commission counsel, and, on the brief, *Charles Krich*, for the appellee (named defendant).

*Stephen P. Horner*, for the appellee (defendant Angela Malizia).

*Opinion*

PALMER, J. The principal issue in this appeal is whether, upon finding that an employer has unlawfully discriminated against an employee in violation of General Statutes § 46a-60 (a) (4) and (8),[1] a hearing officer

---

[1] General Statutes § 46a-60 provides in relevant part: "(a) It shall be a discriminatory practice in violation of this section:

\* \* \*

"(4) For any person, employer, labor organization or employment agency to discharge, expel or otherwise discriminate against any person because such person has opposed any discriminatory employment practice or because such person has filed a complaint or testified or assisted in any proceeding under section 46a-82, 46a-83 or 46a-84;

\* \* \*

"(8) For an employer, by the employer or the employer's agent, for an employment agency, by itself or its agent, or for any labor organization, by itself or its agent, to harass any employee, person seeking employment or member on the basis of sex. 'Sexual harassment' shall, for the purposes of this section, be defined as any unwelcome sexual advances or requests for sexual favors or any conduct of a sexual nature when (A) submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment, (B) submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual, or (C) such conduct has the purpose or effect of substantially interfering with an individual's work performance or creating an intimidating, hostile or offensive working environment . . . ."

Although § 46a-60 (a) was amended in 1998; Public Acts 1998, No. 98-180; and 2001; Public Acts 2001, No. 01-28, § 8; those amendments have no bearing on the merits of this appeal. We therefore refer to the current revision of § 46a-60 (a) for convenience.

of the named defendant commission on human rights and opportunities (commission) may award back pay pursuant to General Statutes § 46a-86 (b)[2] without also ordering reinstatement of that employee. We conclude that a hearing officer has the authority to make such an award.

The following relevant facts and procedural history are undisputed. In October, 1993, the defendant, Angela Malizia, was hired as a bookkeeper and secretary by the plaintiff, Thames Talent, Ltd. (Thames Talent), a management company for musical performers. Initially, Malizia worked for Barbara Fucigna, the vice president and secretary of Thames Talent. In December, 1995, however, Malizia began to work exclusively for Bruce Payne, the president of Thames Talent.[3]

Soon thereafter, Payne began to harass Malizia with overtly sexual comments and conduct that were both offensive and embarrassing to her. Specifically, Payne made explicit comments about Malizia's clothing and her body. Payne also quizzed Malizia about the intimate details of her sex life. In addition, Payne purchased underwear for Malizia and showed her pictures of naked women. The embarrassment that Malizia suffered as a

---

[2] General Statutes § 46a-86 (b) provides: "In addition to any other action taken hereunder, upon a finding of a discriminatory employment practice, the presiding officer may order the hiring or reinstatement of employees, with or without back pay, or restoration to membership in any respondent labor organization, provided, liability for back pay shall not accrue from a date more than two years prior to the filing or issuance of the complaint and, provided further, interim earnings, including unemployment compensation and welfare assistance or amounts which could have been earned with reasonable diligence on the part of the person to whom back pay is awarded shall be deducted from the amount of back pay to which such person is otherwise entitled. The amount of any such deduction for interim unemployment compensation or welfare assistance shall be paid by the respondent to the commission which shall transfer such amount to the appropriate state or local agency."

[3] As the president of Thames Talent, Payne had the authority to hire, promote, demote and discharge employees.

result of Payne's comments and conduct was exacerbated by the fact that Payne sometimes engaged in his offensive behavior toward Malizia in front of others. As a result of Payne's comments and conduct, Malizia's relationship with Payne became strained. As Malizia's relationship with Payne deteriorated, the overall atmosphere in the office, which was small,[4] became tense.

Malizia became withdrawn as a result of the ongoing harassment that she had experienced. She also began to wear baggy clothes to work in an effort to discourage Payne from continuing to harass her. Payne's offensive comments and conduct did not cease, however, and, on January 22, 1997, after Payne had made a particularly graphic statement about Malizia's body, Malizia asked Payne to refrain from making such remarks because they made her feel uncomfortable.[5]

Approximately one week later, on or about January 29, 1997, Malizia met with Payne to discuss her work performance. Payne informed her that he was happy with her work and that she might receive a raise if she continued to perform her job at the same level of competence. Two days after that meeting, Malizia met with Payne and Fucigna to discuss, among other things, the continuing tension in the office. Malizia stated that she felt uncomfortable in the office as a result of Payne's comments and behavior. Payne apparently was annoyed that Malizia had raised the issue and, several days later, on February 3, 1997, he met with Malizia again. At this meeting, Payne informed Malizia that her employment with Thames Talent was being terminated. According to Payne, Malizia was discharged as a result of their inability to work together.

---

[4] Between three and four people worked in the office at all relevant times.

[5] We need not further describe the details of Payne's offensive and harassing behavior because, for purposes of this appeal, Thames Talent does not contest the hearing officer's finding of sexual harassment.

Following her discharge, Malizia was depressed and, therefore, did not immediately seek employment. She eventually secured some temporary jobs, however, and finally accepted a permanent, full-time position at a computer software consulting firm. Malizia received approximately $7916 in unemployment compensation from the state of Connecticut for the period of time that she was unemployed after her discharge from Thames Talent.[6]

On July 23, 1997, Malizia filed a complaint with the commission alleging that she was subjected to sexual harassment while employed by Thames Talent as a result of a hostile work environment, in violation of § 46a-60 (a) (8). Malizia also alleged that she had been discharged by Thames Talent for objecting to that harassment, in violation of § 46a-60 (a) (4).[7] Thereafter, a hearing was conducted on Malizia's complaint. After the hearing, the hearing officer, in a detailed and comprehensive memorandum of decision, concluded that Malizia had "established . . . that [Thames Talent] sexually harassed her by creating a hostile work environment and subsequently terminated her employment in retaliation for her opposition to the harassment."

In determining the appropriate remedy under § 46a-86 (b), the hearing officer began by explaining that the primary objective "is to make the complainant whole and place her in the position she would have been absent [the] discriminatory discharge [by Thames Talent]." With this overriding principle in mind, the hearing officer awarded Malizia back pay[8] and prejudgment

[6] Malizia was unemployed for approximately twenty-four weeks following her departure from Thames Talent.

[7] Malizia also alleged that Thames Talent had violated her rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (2000). The merits of Malizia's Title VII claim are not at issue in this appeal.

[8] The hearing officer's award of back pay was predicated upon the salary, merit increases and fringe benefits to which Malizia would have been entitled had she not been discharged.

interest totaling $45,473.[9] The hearing officer also ordered Thames Talent to pay postjudgment interest on the unpaid balance of the award and to reimburse the state for the $7916 that the state had paid to Malizia in unemployment compensation benefits.[10]

Finally, the hearing officer, noting that Malizia had not sought reinstatement to her position at Thames Talent pursuant to § 46a-86 (b), concluded that, in light of the "office environment and [Malizia's] strained (and seemingly irreparable) relationship with Payne . . . reinstatement [was] not a feasible remedy." Thus, the hearing officer did not order that Malizia be reinstated by Thames Talent.

Thames Talent appealed from the decision of the hearing officer to the Superior Court pursuant to General Statutes §§ 46a-94a (a)[11] and 4-183.[12] On appeal to the trial court, Thames Talent claimed that, because it

[9] This amount includes offsets for unemployment compensation that Malizia had received and for income that she had earned from any employment following the date of her discharge by Thames Talent until the date of the hearing officer's decision. For purposes of this appeal, Thames Talent does not dispute any of the calculations underlying the hearing officer's award.

[10] In addition, the hearing officer ordered Thames Talent to "cease and desist from all acts of discrimination prohibited by state or federal law, and [to] provide a nondiscriminatory work environment pursuant to state and federal law." The hearing officer further required Thames Talent to "post in prominent and accessible locations, visible to all employees and applicants for employment, such notices regarding statutory antidiscrimination provisions as the commission shall provide . . . within three working days of their receipt." Finally, the hearing officer prohibited Thames Talent from providing any information to any prospective employer of Malizia other than her dates of employment, the last position she held and her rate of pay. Thames Talent does not challenge these orders on appeal.

[11] General Statutes § 46a-94a (a) provides in relevant part: "The [c]ommission . . . any respondent or any complainant aggrieved by a final order of a presiding officer . . . may appeal therefrom in accordance with section 4-183. . . ."

[12] General Statutes § 4-183 provides in relevant part: "(a) A person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision may appeal to the Superior Court as provided in this section. . . ."

had not been ordered to reinstate Malizia, the hearing officer lacked authority under § 46a-86 (b) to: (1) award Malizia back pay and prejudgment and postjudgment interest; and (2) order it to reimburse the state for the unemployment compensation benefits that the state had paid to Malizia subsequent to her discharge from Thames Talent. The trial court rejected these claims and dismissed the appeal. Thames Talent thereafter appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

On appeal to this court, Thames Talent does not challenge the hearing officer's findings regarding the existence of a hostile work environment and retaliatory discharge. Nor does Thames Talent contest the calculations that form the basis of the hearing officer's award. Rather, Thames Talent claims on appeal that, under § 46a-86 (b), an order of reinstatement is a precondition to (1) any award of back pay, and (2) any requirement of reimbursement to the state for Malizia's unemployment compensation benefits. On the basis of its construction of § 46a-86 (b), Thames Talent maintains that, because the hearing officer did not order Malizia's reinstatement, the hearing officer lacked authority to award Malizia back pay and to order it to reimburse the state for Malizia's unemployment compensation benefits. In addition, Thames Talent claims that the hearing officer improperly awarded Malizia prejudgment and postjudgment interest. We reject Thames Talent's claims, which we address in turn.

## I

Thames Talent's primary claim is that § 46a-86 (b) only authorizes an award of back pay when that award is accompanied by an order of reinstatement. Malizia contends, however, that the statute authorizes an award

of back pay regardless of whether reinstatement is ordered.[13] We agree with Malizia.

Thames Talent's claim presents an issue of statutory construction over which our review is plenary.[14] E.g., *W & D Acquisition, LLC* v. *First Union National Bank*, 262 Conn. 704, 709, 817 A.2d 91 (2003). "That review is guided by well established principles of statutory interpretation, the fundamental objective of which is to ascertain the intent of the legislature. . . . As with all issues of statutory interpretation, we look first to the language of the statute." (Citation omitted; internal quotation marks omitted.) *State* v. *Ledbetter*, 263 Conn. 1, 12, 818 A.2d 1 (2003).

General Statutes § 46a-86 (b) provides in relevant part: "In addition to any other action taken hereunder, upon a finding of a discriminatory employment practice, the presiding officer *may order the hiring or reinstatement of employees, with or without back pay* . . . ." (Emphasis added.) On the basis of this language, Thames Talent contends that the phrase "with or without back pay" relates back to the phrase "hiring or reinstatement of employees," and, therefore, a hiring order or order of reinstatement is a precondition to an award of back pay. We acknowledge that a strict or narrow reading of the pertinent language of § 46a-86 (b) tends to support the statutory interpretation urged by Thames Talent.

---

[13] The commission and Malizia take the same position on each of the issues raised in this appeal. For convenience, we refer only to Malizia when stating her position and that of the commission on those issues.

[14] Although an agency's reasonable construction of a statute is entitled to some deference when the agency has articulated and applied that interpretation over an extended period of time; e.g., *Hartford* v. *Hartford Municipal Employees Assn.*, 259 Conn. 251, 262, 788 A.2d 60 (2002); there is no claim that the construction urged by Malizia has been articulated and applied by the commission over an extended period of time. Consequently, judicial deference to that construction of § 46a-86 (b) is inappropriate in the present case. E.g., *Southern New England Telephone Co.* v. *Dept. of Public Utility Control*, 261 Conn. 1, 13–14, 803 A.2d 879 (2002).

We do not construe statutes in a linguistic vacuum, however. Thus, when useful to our determination of the meaning of a statute, we also refer to, inter alia, the circumstances surrounding the statute's enactment, the policy that the legislature sought to implement in enacting the statute, and the statute's relationship to other legislation and common-law principles governing the same general subject matter. E.g., *Hartford Courant Co.* v. *Freedom of Information Commission*, 261 Conn. 86, 99, 801 A.2d 759 (2002). For several compelling reasons, we conclude that an award of back pay under § 46a-86 (b) is not dependent on an order of reinstatement.

"Under our laws prohibiting discrimination in the workplace, a hearing officer must construct a remedy for discriminatory employment practices in order to render a decree that will, so far as possible, eliminate the discriminatory effects of the past as well as bar like discrimination in the future. . . . This remedial goal is furthered by vesting in a hearing officer broad discretion to award reinstatement, back pay or other appropriate remedies specifically tailored to the particular discriminatory practices at issue." (Citations omitted; internal quotation marks omitted.) *Commission on Human Rights & Opportunities* v. *Truelove & Maclean, Inc.*, 238 Conn. 337, 350, 680 A.2d 1261 (1996). Thus, the overriding purpose of the statutory scheme is to "restore those wronged to their rightful economic status absent the effects of the unlawful discrimination." (Internal quotation marks omitted.) *Bridgeport Hospital* v. *Commission on Human Rights & Opportunities*, 232 Conn. 91, 111, 653 A.2d 782 (1995). Consequently, it is the responsibility of the commission "to ensure that whatever remedy is fashioned for the employee be designed to return him or her to the same economic status he or she would have had in the workplace if

[the] unlawful discrimination never occurred." (Internal quotation marks omitted.) Id.

While that remedy may include reinstatement of the employee to his or her former position or to a new position with the same employer; see id.; our laws prohibiting workplace discrimination also require "that consideration be given to awarding monetary relief to any employee who cannot otherwise be restored to the economic status he or she would have had were it not for the discriminatory conduct in question." (Internal quotation marks omitted.) Id., 112. Thus, the legislature, in enacting § 46a-86 (b), intended to provide the hearing officer with the flexibility necessary to render an award that is best suited to redress the economic harm suffered by an employee in any particular set of circumstances. Finally, as a remedial statute, § 46a-86 (b) is to be construed liberally in favor of those whom it is intended to protect, namely, victims of prohibited workplace discrimination. See, e.g., *Dysart Corp.* v. *Seaboard Surety Co.*, 240 Conn. 10, 18, 688 A.2d 306 (1997).

The construction of § 46a-86 (b) advanced by Thames Talent is antithetical to these overarching principles that inform our interpretation of that statutory subsection. Because there are circumstances in which reinstatement may be impractical, imprudent or even impossible,[15] conditioning an award of back pay on reinstatement would thwart the intent of the legislature to assure that an employee who is discriminated against in the workplace will be made whole to the fullest

---

[15] For example, reinstatement may be impractical because the employee no longer has the skills or competence to perform the work of the employer. Reinstatement may be imprudent because, as in the present case, it would be unwise to place the employee back in a work setting that, under the circumstances, is likely to result in undue tension or animosity between employee and employer. Finally, reinstatement may be impossible because the employer has ceased doing business or the employee has died.

extent possible. See, e.g., *Collins* v. *Colonial Penn Ins. Co.*, 257 Conn. 718, 729, 778 A.2d 899 (2001) ("we read each statute in a manner that will not thwart its intended purpose"). In other words, there likely will be many cases in which an award of back pay is necessary to make the employee whole even though reinstatement is not a viable option. Thames Talent has offered no reason, and we are aware of none, why the legislature would have intended to limit an award of back pay only to those cases in which reinstatement also happens to be an appropriate part of the award. Indeed, such a scheme would be irrational in light of the intent of the legislature that an employee who suffers unlawful discrimination in the workplace should be restored to the economic status that he or she would have attained but for the employer's discriminatory conduct. See, e.g., *Modern Cigarette, Inc.* v. *Orange*, 256 Conn. 105, 120, 774 A.2d 969 (2001) (in construing statutes, court must use common sense and assume that reasonable and rational result was intended).

Furthermore, the construction of § 46a-86 (b) that Thames Talent urges would lead to absurd consequences. For example, as the trial court noted, an employer who engages in discrimination would have an incentive to make the work environment sufficiently hostile so that reinstatement of the employee would not be prudent, thereby obviating the possibility of an award of back pay. Thus, Thames Talent's construction of § 46a-86 (b) effectively would reward the most offensive or flagrant discriminatory behavior by an employer, a bizarre and obviously unintended result in view of the remedial purpose of our laws prohibiting workplace discrimination. See, e.g., *Vibert* v. *Board of Education*, 260 Conn. 167, 177, 793 A.2d 1076 (2002) (we will not interpret statutes to reach bizarre or absurd results).

Yet another absurd result arises from the construction of § 46a-86 (b) advanced by Thames Talent. Under

that construction, an employee who has suffered discrimination in the workplace likely would be forced to seek an order of reinstatement—even if, as in the present case, he or she does not wish to be reinstated—merely for the purpose of assuring that he or she will be eligible to receive an award of back pay. Indeed, the employee presumably could return to his or her former employer for one day and then resign. It simply makes no sense to read § 46a-86 (b) to require an employee to engage in such a strategy solely to preserve his or her eligibility to receive back pay.[16]

Furthermore, our construction of § 46a-86 (b) is consistent with the federal courts' interpretation of the analogous provision of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. "We have often looked to federal employment discrimination law for guidance in enforcing our own anti-discrimination statute." (Internal quotation marks omitted.) *Williams* v. *Commission on Human Rights & Opportunities*, 257 Conn. 258, 278, 777 A.2d 645 (2001). Specifically, "[i]n determining the scope of the relief authorized by the statute, we are properly guided by the case law surrounding federal fair employment legislation." *Civil Service Commission* v. *Commission on Human Rights & Opportunities ex rel. Trainor*, 195 Conn. 226, 230, 487 A.2d 201 (1985). Under 42 U.S.C. § 2000e-5 (g) (1),[17] the remedy provision of Title VII, federal courts

---

[16] Moreover, even if the employee were to seek reinstatement merely to preserve his or her eligibility to receive back pay, there is no guarantee that reinstatement would be a viable option. See footnote 15 of this opinion. Under the interpretation of § 46a-86 (b) proposed by Thames Talent, the employee then would have no effective recourse against the employer notwithstanding that the employer's discrimination caused the employee economic harm.

[17] Title 42 of the United States Code, § 2000e-5 (g), provides in relevant part: "(1) If the court finds that the [employer, employment agency or labor organization] has intentionally engaged in or is intentionally engaging in an unlawful employment practice . . . the court may enjoin the [employer, employment agency or labor organization] from engaging in such unlawful employment practice, and order such affirmative action as may be appro-

are vested with broad discretion to fashion a remedy designed to make the victim of workplace discrimination whole. See, e.g., *Albemarle Paper Co.* v. *Moody*, 422 U.S. 405, 421, 95 S. Ct. 2362, 45 L. Ed. 2d 280 (1975); *Bridgeport Guardians, Inc.* v. *Bridgeport*, 933 F.2d 1140, 1149 (2d Cir.), cert. denied sub nom. *Bridgeport Police for Equal Employment Opportunity, Inc.* v. *Bridgeport Guardians, Inc.*, 502 U.S. 924, 112 S. Ct. 337, 116 L. Ed. 2d 277 (1991). Indeed, under Title VII, "backpay should be denied only for reasons which . . . would not frustrate the central statutory purposes of eradicating discrimination . . . and making persons whole for injuries suffered through past discrimination." *Albemarle Paper Co.* v. *Moody*, supra, 421. Accordingly, in recognition of the fact that reinstatement will not always be possible or appropriate in a case in which an award of back pay is necessary to remediate the economic effects of workplace discrimination, federal courts do not treat reinstatement as a precondition to an award of back pay. E.g., *Marks* v. *Prattco, Inc.*, 607 F.2d 1153, 1155 (5th Cir. 1979); *Helbling* v. *Unclaimed Salvage & Freight Co.*, 489 F. Sup. 956, 963 (E.D. Pa. 1980); see *Thomas* v. *National Football League Players Assn.*, 131 F.3d 198, 207 (D.C. Cir. 1997); *Snider* v. *Consolidation Coal Co.*, 973 F.2d 555, 561 (7th Cir. 1992), cert. denied, 506 U.S. 1054, 113 S. Ct. 981, 122 L. Ed. 2d 134 (1993); *Evans* v. *Connecticut*, 967 F. Sup. 673, 683, 684 and n.17 (D. Conn. 1997); *Tidwell* v. *American Oil Co.*, 332 F. Sup. 424, 436–37

---

priate, which may include, but is not limited to, *reinstatement or hiring of employees, with or without back pay* (payable by the employer, employment agency, or labor organization, as the case may be, responsible for the unlawful employment practice), or any other equitable relief as the court deems appropriate. . . ." (Emphasis added.) 42 U.S.C. § 2000e-5 (g) (1) (2000); cf. General Statutes § 46a-86 (b) ("upon a finding of a discriminatory employment practice, the presiding officer may order *the hiring or reinstatement of employees, with or without back pay*" [emphasis added]).

(D. Utah 1971).[18] Thus, we conclude that § 46a-86 (b), which is substantially similar to its federal counterpart; see footnote 17 of this opinion; likewise permits recovery of back pay, when appropriate, regardless of whether reinstatement also is ordered.[19]

---

[18] We also note that the remedy provision of the federal Labor Management Relations Act of 1947 (act), 29 U.S.C. § 141 et seq., is similar to § 46a-86 (b). See 29 U.S.C. § 160 (c) (2000) (upon finding of "unfair labor practice . . . the [National Labor Relations] Board . . . shall issue . . . an order requiring . . . [the entity engaging in the unfair labor practice] to take such affirmative action including reinstatement of employees with or without back pay"). It is well settled that reinstatement is not a precondition to an award of back pay under that act. E.g., *Bon Hennings Logging Co.* v. *National Labor Relations Board*, 308 F.2d 548, 556 (9th Cir. 1962); *National Labor Relations Board* v. *Brookside Industries, Inc.*, 308 F.2d 224, 228 (4th Cir. 1962).

[19] Thames Talent maintains that General Statutes §§ 46a-100 through 46a-104, which permit a complainant who alleges workplace discrimination to bring a civil action in Superior Court upon obtaining a release from the commission, support its construction of § 46a-86 (b). In particular, Thames Talent claims that, because the Superior Court has the authority in such a civil action to grant "such legal and equitable relief which it deems appropriate"; General Statutes § 46a-104; the legislature intended to limit the relief available under § 46a-86 (b). We disagree. The provisions governing the role of the commission were "designed to provide both complainants and respondents with a means to resolve discrimination claims without the greater delay and expense characteristic of bringing an action in state or federal court." (Internal quotation marks omitted.) *Thibodeau* v. *Design Group One Architects, LLC*, 260 Conn. 691, 711, 802 A.2d 731 (2002). In light of this important purpose served by the administrative scheme, which, of course, may include a contested hearing at which a victim of workplace discrimination will be able to establish that an award of back pay is necessary to make her whole, we see no persuasive reason why the legislature would have intended to limit the authority of the hearing officer in the manner urged by Thames Talent.

Furthermore, the legislative history surrounding the enactment of §§ 46a-100 through 46a-104 indicates that those provisions were intended to provide an additional forum for the resolution of discrimination complaints because of increasing delays in the processing of those complaints by the commission; see 34 S. Proc., Pt. 8, 1991 Sess., pp. 2576–77, remarks of Senator James H. Maloney; 34 H.R. Proc., Pt. 23, 1991 Sess., p. 8909, remarks of Representative Joseph A. Adamo; 34 H.R. Proc., supra, p. 8910, remarks of Representative Elizabeth Brown; 34 H.R. Proc., supra, p. 8914, remarks of Representative M. Jodi Rell; 34 H.R. Proc., supra, p. 8918, remarks of Representative Eric D. Coleman; 34 H.R. Proc., supra, pp. 8920–21, remarks of Representative

## II

As a corollary to its contention that an award of back pay without reinstatement is not permitted under § 46a-86 (b), Thames Talent also claims that the hearing officer's order directing it to reimburse the state for Malizia's unemployment compensation benefits also was not authorized under § 46a-86 (b). This claim also fails. Section 46a-86 (b) provides, inter alia, that, if back pay is awarded to the employee, the employer must pay the commission any amount deducted for unemployment compensation or welfare assistance benefits.[20] Because we conclude that back pay properly was awarded in the present case; see part I of this opinion; it necessarily follows that § 46a-86 (b) clearly authorized the hearing officer to order Thames Talent to pay to the commission any amounts deducted from Malizia's back pay award for any interim unemployment compensation benefits that she received from the state. We therefore reject Thames Talent's claim to the contrary.

## III

Thames Talent next maintains that the hearing officer improperly awarded both prejudgment and postjudgment interest on the back pay award. Malizia contends that General Statutes § 37-3a[21] and § 46a-86 (b) each

---

Dale W. Radcliffe; and not because of any perceived deficiency in the remedies available under § 46a-86 (b). We therefore reject Thames Talent's claim that §§ 46a-100 through 46a-104 support its interpretation of § 46a-86 (b).

[20] General Statutes § 46a-86 (b) provides in relevant part: "[I]nterim earnings, including unemployment compensation and welfare assistance . . . shall be deducted from the amount of back pay to which such person is otherwise entitled. The amount of any such deduction for interim unemployment compensation or welfare assistance shall be paid by the respondent to the commission which shall transfer such amount to the appropriate state or local agency."

[21] General Statutes § 37-3a provides in relevant part: "[I]nterest at the rate of ten per cent a year, and no more, may be recovered and allowed in civil actions or arbitration proceedings under chapter 909, including actions to recover money loaned at a greater rate, as damages for the detention of money after it becomes payable. . . ."

provide an independent basis for such an award. We conclude that § 46a-86 (b) authorized the hearing officer to award prejudgment and postjudgment interest.[22]

Although § 46a-86 (b) contains no express provision authorizing an award of interest, the primary purpose of that statutory subsection is to make whole an employee who has suffered economic harm as a result of workplace discrimination. See, e.g., *Bridgeport Hospital* v. *Commission on Human Rights & Opportunities,* supra, 232 Conn. 111. An award of back pay, of course, frequently will be an important element of any remedy under § 46a-86 (b) because back pay is designed to return the complainant to the economic status that he or she would have enjoyed but for the employer's unlawful discrimination. Back pay alone, however, often will be inadequate to make the complainant whole in light of the fact that "[m]oney today is simply not a full substitute for the same sum that should have been paid some time ago." *Williamson* v. *Handy Button Machine Co.,* 817 F.2d 1290, 1297 (7th Cir. 1987). Because it would be contrary to the fundamental purpose of our laws against workplace discrimination to deprive a person victimized by such discrimination of the true value of the money to which he or she lawfully is entitled, we conclude that prejudgment interest is a proper component of an award of back pay under § 46a-86 (b).[23] See

---

[22] Because we conclude that the interest award was authorized under § 46a-86 (b), we need not address the propriety of such an award under § 37-3a.

[23] Our conclusion is consistent with the federal courts' interpretation of 42 U.S.C. § 2000e-5 (g) (1), the remedy provision of Title VII that is substantially similar to § 46a-86 (b). See footnote 17 of this opinion. As the United States Supreme Court has stated, "[t]he backpay award authorized by . . . 42 U.S.C. § 2000e-5 (g) . . . is a manifestation of Congress' intent to make persons whole for injuries suffered through past discrimination. . . . Prejudgment interest, of course, is an element of complete compensation." (Citation omitted; internal quotation marks omitted.) *Loeffler* v. *Frank,* 486 U.S. 549, 558, 108 S. Ct. 1965, 100 L. Ed. 2d 549 (1988). Indeed, under Title VII, it generally is considered an abuse of discretion for a court not to award prejudgment interest. E.g., *Saulpaugh* v. *Monroe Community Hospital,* 4

*Paulus* v. *LaSala*, 56 Conn. App. 139, 147, 742 A.2d 379 (1999), cert. denied, 252 Conn. 928, 746 A.2d 789 (2000) (purpose of interest is to compensate party deprived of use of money); see also *Bufco Corp.* v. *National Labor Relations Board*, 147 F.3d 964, 967 (D.C. Cir. 1998) ("[t]he return on the money belongs to the victim, not the wrongdoer, and interest is the means by which this transfer is accomplished" [internal quotation marks omitted]).

We come to the same conclusion regarding postjudgment interest. "[T]he purpose of postjudgment interest is to compensate the successful [party] for being deprived of compensation for the loss from the time between the ascertainment of the damage and the payment by the [losing party]." (Internal quotation marks omitted.) *Kaiser Aluminum & Chemical Corp.* v. *Bonjorno*, 494 U.S. 827, 835–36, 110 S. Ct. 1570, 108 L. Ed. 2d 842 (1990). "If the [victim of workplace discrimination] is to be made whole on the date of payment, interest must be allowed during the period between verdict and payment." (Internal quotation marks omitted.) *Poleto* v. *Consolidated Rail Corp.*, 826 F.2d 1270, 1280 (3d Cir. 1987). As between employer and employee, we see no reason why an employee who has been harmed economically by an employer's discriminatory practices necessarily should bear the costs resulting from the loss of the use of the money that he or she is awarded from the time of the award until the award is paid in full. Furthermore, as we previously have discussed; see part I of this opinion; the legislature intended that victims of workplace discrimination are to be made whole to the fullest extent possible, and our statutes barring such discrimination are to be liberally construed in favor of those victims. We therefore are

---

F.3d 134, 145 (2d Cir. 1993), cert. denied, 510 U.S. 1164, 114 S. Ct. 1189, 127 L. Ed. 2d 539 (1994); *Clarke* v. *Frank*, 960 F.2d 1146, 1154 (2d Cir. 1992).

persuaded that an award of postjudgment interest is permissible under § 46a-86 (b).[24]

Our conclusion is buttressed by the fact that any remedy under § 46a-86 (b) should be designed to bar similar discriminatory conduct in the future. See *Commission on Human Rights & Opportunities* v. *Truelove & Maclean, Inc.*, supra, 238 Conn. 350. Postjudgment interest, like prejudgment interest, advances this goal by preventing an employer "from attempting to enjoy an interest-free loan for as long as it can delay paying out back wages." (Internal quotation marks omitted.) *Saulpaugh* v. *Monroe Community Hospital*, 4 F.3d 134, 145 (2d Cir. 1993), cert. denied, 510 U.S. 1164, 114 S. Ct. 1189, 127 L. Ed. 2d 539 (1994).

We conclude, therefore, that § 46a-86 (b) vested the hearing officer with authority to award Malizia both prejudgment and postjudgment interest on the back pay award. Accordingly, we reject the claim of Thames Talent that the hearing officer improperly included such interest in Malizia's award.

The judgment is affirmed.

In this opinion the other justices concurred.

---

[24] Whether postjudgment interest is appropriate must be determined on a case-by-case basis. Because Thames Talent's only claim in regard to postjudgment interest is that it is not statutorily authorized, the propriety of the hearing officer's award of postjudgment interest in the present case is not at issue in this appeal.