******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# MICHAEL KIYAK *v.* DEPARTMENT OF AGRICULTURE ET AL.
## (AC 43314)

Cradle, Alexander and Harper, Js.

*Syllabus*

The plaintiff appealed to the Superior Court from the final decision of the defendant Department of Agriculture upholding disposal orders to euthanize the plaintiff's dog, which had bitten several people. An animal control officer for the defendant town of Fairfield issued the orders pursuant to the statute (§ 22-358) pertaining to biting animals. A department hearing officer had upheld the disposal orders in a proposed final decision that the department then adopted as its final decision. The Superior Court dismissed the plaintiff's appeal from the department's decision, concluding, inter alia, that he failed to prove that the department acted unreasonably, arbitrarily, illegally or in abuse of its discretion in upholding the disposal orders. On appeal to this court, the plaintiff claimed, inter alia, that the Superior Court erred in dismissing his appeal because § 22-358 (c) was unconstitutionally vague as applied in that the word "necessary" in the statute, concerning the issuance of a disposal order, authorizes arbitrary enforcement of the statute, and that his right to procedural due process was violated because the hearing officer adhered to no known rules, standards or procedures in determining that the disposal orders were necessary. *Held*:

1. The plaintiff's claim that § 22-358 (c) was unconstitutionally vague as applied was unavailing; the statute's lack of an explicit definition of "necessary" did not render it void for vagueness, as § 22-358 gives a person of ordinary intelligence a reasonable opportunity to know what is prohibited and provides sufficient notice that animal control officers are granted the discretion to decide what enforcement is necessary to protect the public in the case of a biting dog.

2. The plaintiff could not prevail on his claim that his right to procedural due process was violated because the hearing officer used inadequate procedures in upholding the decision of the animal control officer; the Superior Court's procedural due process analysis pursuant to the factors enunciated in *Mathews* v. *Eldridge* (424 U.S. 319) showed that the plaintiff's private interest in the possession of his dog was outweighed by the long-standing recognition that dogs that cause harm are subject to the police power of the state, the appeal procedures provided to the plaintiff pursuant to the Uniform Administrative Procedure Act (§ 4-166 et seq.) afforded him an adequate opportunity to challenge the disposal orders, and the imposition on the department of an obligation to provide a probable cause hearing in addition to the hearing before the hearing officer would be unduly burdensome, as it would require essentially duplicate proceedings.

3. The hearing officer did not abuse his discretion by admitting and considering the animal control officer's expert testimony in light of the officer's knowledge, education and extensive experience and training in his position as an animal control officer.

Argued September 22, 2021—officially released January 25, 2022

*Procedural History*

Appeal from the decision of the named defendant affirming disposal orders for the plaintiff's dog, brought to the Superior Court in the judicial district of New Britain and tried to the court, *Huddleston, J.*; judgment dismissing the appeal, from which the plaintiff appealed to this court. *Affirmed*.

*Thompson G. Page*, for the appellant (plaintiff).

*Gail S. Shane*, assistant attorney general, with whom,

on the brief was *William Tong*, attorney general, for the appellee (named defendant).

*Catherine L. Creager*, for the appellee (defendant town of Fairfield).

*Opinion*

ALEXANDER, J. The plaintiff, Michael Kiyak, appeals from the judgment of the Superior Court dismissing his administrative appeal from the final decision of the defendant Department of Agriculture (department) to uphold two disposal orders issued by an animal control officer for the defendant town of Fairfield (town)[1] to euthanize the plaintiff's German shepherd dog pursuant to General Statutes § 22-358. On appeal, the plaintiff claims that the court erred in dismissing his appeal because (1) § 22-358 (c) is unconstitutionally vague as applied in that the word "necessary," concerning the issuance of a disposal order, authorizes arbitrary enforcement of the statute, (2) the department's hearing officer violated the plaintiff's right to procedural due process by using inadequate procedures in upholding the disposal orders, and (3) the hearing officer erred in designating Animal Control Officer Paul Miller as an expert. We affirm the judgment of the Superior Court dismissing the plaintiff's appeal.

The department found the following facts that are relevant to this appeal. "The plaintiff is the owner of a German shepherd dog named Jack. At the time of the hearing, the [plaintiff] was eighty-three years old and resided with his eighty-one year old wife, Nancy Kiyak, at 61 Lind Street in Fairfield . . . . Nancy Kiyak has Alzheimer's disease, and the plaintiff is her caregiver.

"The plaintiff obtained Jack in 2014 or 2015. Jack had previously been living in Florida and was named 'Semper' while living there.

"On May 3, 2016, Lucy Meehan was jogging on Lind Street, a public road, when Jack attacked and bit her on her right leg, her arm, and her chest. . . . The bite wounds required medical attention.

"Meehan's testimony was corroborated by the plaintiff, who testified that, when Jack attacked Meehan, the plaintiff ran over to shield her from Jack because he 'didn't know if [Jack] was going to attack again.' At the time of this incident, Jack was a 100 pound dog. Meehan did not provoke Jack. . . .

"On May 27, 2016, the town issued a restraint order on Jack and provided the plaintiff with the opportunity to take Jack out of state. After the restraint order was issued, some area residents expressed concern about their safety, and Fairfield Animal Control reopened the investigation to determine whether there were prior incidents involving Jack.

"One such incident had occurred in about December, 2015, when Jack bit the plaintiff's wife, Nancy Kiyak, in their home. At the hearing, the plaintiff confirmed that incident, testifying that he had told his wife that the dog was in the garage and that she should not go into the garage. Because of her Alzheimer's disease and

lack of memory, Nancy Kiyak went into the garage, where Jack attacked and bit her. The plaintiff took his wife to a walk-in clinic for treatment of the bite wound, but he did not report the bite incident to an animal control officer.

"The animal control officer, Miller, traced Jack's origins through his rabies tags to Florida and learned that Jack . . . was involved in a biting incident in Florida. The plaintiff confirmed the dog's origin in Florida and his name in Florida. According to a town exhibit, while in Florida, Jack bit an eleven year old boy on his arm while the boy was walking home from school, and the wound required stitches.

"Based on his continuing investigation, on July 15, 2016, Miller issued a disposal order on the dog . . . citing three biting incidents: the bite incident involving Meehan, the bite incident involving Nancy Kiyak, and the bite incident in Florida. The plaintiff, who has been unable to relocate Jack out of state, voluntarily took Jack to the animal control facility on the same date to address the impending disposal order. The plaintiff appealed the disposal order to the department.

"Jack was held at the Fairfield Animal Control facility while the plaintiff's appeal of the disposal order was pending. The plaintiff was allowed to come in and feed Jack. The plaintiff asked Miller not to allow anybody near the dog . . . . On or about December 12, 2016, the plaintiff was visiting Jack. The plaintiff did not have Jack on a leash but was holding his choke collar while preparing to take him out into an enclosed run for exercise. Jack broke loose from the plaintiff and attacked Emily Quintiliano, a kennel worker at the facility. Quintiliano, who has interacted with hundreds of animals, testified that she did not provoke the attack and that she had believed Jack was under the plaintiff's control. She testified that Jack approached her quickly, barking and continuously growling, and backed her down an aisle and against a wall before biting her. . . . The bite caused scarring.

"On December 24, 2016, Miller issued a second disposal order on Jack. This order cited the biting incident involving Quintiliano . . . in addition to the three previous bite incidents involving Jack. The plaintiff appealed the second disposal order.

"Miller has been an animal control officer for twenty-nine years and has come in contact with thousands of animals. He testified that he has not been involved in many biting incidents where disposal orders have been issued, and he does not issue them lightly. In this case, he assessed the seriousness of the bites, the number of bites, and past history. He testified that Jack is 'mean and aggressive' and 'one of the most dangerous dogs' he has ever seen. . . .

"Miller testified that Jack should stay in the custody

of animal control for the pendency of this case and that it would be dangerous to release him. He testified that the plaintiff has difficulty controlling Jack and that 'Jack is a clear and present risk and threat to public safety.' . . .

"The town introduced a written statement by veterinarian John T. Kristy, who stated that Jack was 'too dangerous to handle for a reasonable physical examination.' In examining Jack, Kristy feared for his own safety. He stated that Jack is 'large, strong and aggressive, and should be handled with extreme caution due to the potential for extreme physical injury.'

"The plaintiff testified, to the contrary, that Jack 'is not very dangerous.'

"The hearing officer found all four witnesses to be honest and credible, but, in light of the evidence in the record, he disagreed with the plaintiff's opinion that Jack 'is not very dangerous.' He found Miller's testimony and his assessment of Jack's temperament to be credible and reliable. He found that Miller has expertise in the assessment of aggressive or dangerous dogs, given his twenty-nine years as an animal control officer, training received in the course of his employment, and training with the National Animal Control Officers. The hearing officer also found Quintiliano's testimony to be credible and reliable in light of her considerable experience in handling dogs during her ten years as a kennel keeper.

"During the hearing, the plaintiff's counsel argued that 'public safety' was not an adequate justification for issuing a disposal order or for holding Jack during the pendency of the appeal. The hearing officer rejected those arguments, noting that § 22-358 authorizes the killing of dogs under several circumstances . . . and allows for the issuance of restraint or disposal orders as to dogs that bite. The hearing officer found that the evidence in the record established that the plaintiff is unable to control Jack because Jack bit Nancy Kiyak, Meehan, and Quintiliano in the plaintiff's presence, and Jack actually broke free of the plaintiff in two of those incidents.

"The plaintiff's counsel indicated during the proceedings that he had filed suit in [the United States District Court for the District of Connecticut] on behalf of the Kiyaks. His arguments concerned alleged procedural and constitutional violations. At no time did he argue or offer evidence that Jack was not the dog that bit Nancy Kiyak, Meehan, or Quintiliano, that Jack was not aggressive or dangerous, that the bites were not serious, or that Nancy Kiyak or other residents would not be in danger if Jack was returned home. The plaintiff did not present an alternative to a disposal order that could have been considered.

"The hearing officer concluded that the town had

proved, by a preponderance of the evidence, that Jack is a dog of dangerous propensity and that the statutory elements for issuance of a disposal order had been satisfied. After review of the proposed decision, and after hearing argument both from the plaintiff's counsel and from the plaintiff himself, the [C]ommissioner [of Agriculture (commissioner)] adopted the proposed decision as the final decision of the department." (Internal quotation marks omitted.)

Thereafter, the plaintiff appealed to the Superior Court and claimed that (1) § 22-358 (c) is unconstitutionally vague and that its enforcement violated his constitutional rights, (2) the hearing officer admitted irrelevant and prejudicial information concerning the dog and improper expert testimony by Miller, (3) the town's retention of the dog was an illegal taking without due process, (4) the town's decision to continue to hold the dog because of Nancy Kiyak's medical condition violated the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq. (2018), and the fourth, fifth and fourteenth amendments to the United States constitution, and (5) the town's continued retention of the dog constitutes a forfeiture and is criminal in nature, invoking constitutional protections that were denied to the plaintiff. The court concluded that the plaintiff failed to meet his burden of proving that the department acted unreasonably, arbitrarily, illegally, or in abuse of its discretion in upholding the disposal orders concerning Jack. In addition, concerning the plaintiff's claim that he was deprived of procedural due process because the department failed to provide him with a probable cause hearing separate from the proceeding before its hearing officer, the court concluded that, "[t]o impose on the department an obligation to provide a probable cause hearing . . . would be unduly burdensome because it would require essentially duplicate proceedings." Accordingly, the Superior Court dismissed the plaintiff's administrative appeal. This appeal followed. Additional facts will be set forth as necessary.

We begin our analysis by setting forth the applicable standard of review. "It is well established that [j]udicial review of [an administrative agency's] action is governed by the Uniform Administrative Procedure Act [(UAPA) General Statutes § 4-166 et seq.] . . . and the scope of that review is very restricted. . . . With regard to questions of fact, it is neither the function of the trial court nor of this court to retry the case or to substitute its judgment for that of the administrative agency. . . . Even for conclusions of law, [t]he court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion. . . . [Thus] [c]onclusions of law reached by the administrative agency must stand if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts." (Citation

omitted; internal quotation marks omitted.) *Commission on Human Rights & Opportunities* v. *Cantillon*, 207 Conn. App. 668, 672, 263 A.3d 887, cert. granted, 340 Conn. 909, 264 A.3d 94 (2021).

"It is fundamental that a plaintiff has the burden of proving that the [agency], on the facts before [it], acted contrary to law and in abuse of [its] discretion . . . . In addition, although we have noted that [a]n agency's factual and discretionary determinations are to be accorded considerable weight by the courts . . . we have maintained that [c]ases that present pure questions of law . . . invoke a broader standard of review than is ordinarily involved in deciding whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion. . . . The plaintiff's constitutional claims are therefore entitled to plenary review." (Citations omitted; internal quotation marks omitted.) *Miller* v. *Dept. of Agriculture*, 168 Conn. App. 255, 266, 145 A.3d 393, cert. denied, 323 Conn. 936, 151 A.3d 386 (2016). With these principles in mind, we address the plaintiff's claims in turn.

On appeal to this court, the plaintiff advances three claims that properly were preserved for our review.[2] First, he argues that § 22-358 (c) is unconstitutionally vague as applied. Second, he claims that the hearing officer violated his right to procedural due process by using inadequate procedures in upholding the disposal orders. Finally, he contends that the hearing officer erred in designating Miller as an expert witness during the hearing. We are not persuaded by these claims.

I

The plaintiff asserts that § 22-358 (c), which provides in relevant part that "any animal control officer . . . may make any order concerning the restraint or disposal of any biting dog, cat or other animal as the commissioner or such officer deems necessary," is unconstitutionally vague as applied because the term "necessary" in the statute authorizes arbitrary enforcement. We disagree.

"Laws must give a person of ordinary intelligence a reasonable opportunity to know what is prohibited so that he may act accordingly. . . . A statute is not void for vagueness unless it clearly and unequivocally is unconstitutional, making every presumption in favor of its validity. . . . To demonstrate that [a statute] is unconstitutionally vague as applied to [him], the [plaintiff] therefore must . . . demonstrate beyond a reasonable doubt that [he] had inadequate notice of what was prohibited or that [he was] the victim of arbitrary and discriminatory enforcement. . . . If the meaning of a statute can be fairly ascertained a statute will not be void for vagueness since [m]any statutes will have some inherent vagueness . . . ." (Internal quotation marks omitted.) *State ex rel. Gregan* v. *Koczur*, 287 Conn. 145,

156, 947 A.2d 282 (2008).

Although the plaintiff concedes that § 22-358 (c) has been found to be clear and unambiguous,[3] the plaintiff makes a strained attempt to attack the word "necessary" contained within the statute. The plaintiff argues that the statute "provides no guidance on the meaning of *necessary*." (Emphasis added.) We are not persuaded.

As the Superior Court acknowledged, "[t]he plaintiff asserted similar constitutional claims in an action brought pursuant to 42 U.S.C. § 1983 in the federal district court. The District Court dismissed the plaintiff's claims." In *Kiyak* v. *Fairfield*, United States District Court, Docket No. 3:17-cv-01426 (AWT) (D. Conn. June 28, 2019), the plaintiff in the present case and his wife, Nancy Kiyak, brought an action against the town and the commissioner. The case concerned the same German shepherd, Jack, and the same disposal orders issued by Animal Control Officer Miller. The plaintiffs asserted a number of claims, including a constitutional challenge to the validity of § 22-358 (c). In the District Court's ruling on the commissioner's motion to dismiss, the court thoroughly addressed the constitutionality of § 22-358 (c): "Here, with respect to assessing the severity of the bite or attack to determine the type of enforcement, § 22-358 (c) explicitly states that the [animal control officer] may make any order concerning the restraint or disposal of any biting dog, cat or other animal as the commissioner or such officer deems necessary. . . . Even assuming arguendo that . . . § 22-358 (c) provides for the exercise of unconstitutionally broad discretion when scrutinized pursuant to a facial challenge, the conduct at issue here falls within the core of the prohibition under § 22-358 (c). [Animal Control Officer] Miller issued a restraining order against Jack after he received a complaint that Jack bit the leg of a jogger . . . . Issuing a restraining order against a dog who bit someone is indicative of that dog's potential danger to the public . . . ." (Citation omitted; internal quotation marks omitted.) Id.

In *Miller* v. *Dept. of Agriculture*, supra, 168 Conn. App. 266 n.12, this court determined that, "by promulgating § 22-358, [the legislature] vested the animal control officer with broad discretion to make orders that such officer deems necessary with respect to the restraint or disposal of any biting dog . . . ." (Internal quotation marks omitted.) The inherent discretion afforded to animal control officers in the statute explicitly has been adjudicated and recognized by this court in *Miller*. The discretion granted to the commissioner and the animal control officers to determine whether an order of restraint or disposal is necessary is informed by the purpose of the statute, which is to protect the public from biting dogs. This reflects the long-standing history that use of the state's police power is appropriate to protect the public from biting dogs. See, e.g.,

*Sentell* v. *New Orleans & Carrollton Railroad Co.*, 166 U.S. 698, 704–705, 17 S. Ct. 693, 41 L. Ed. 1169 (1897).

Furthermore, in *Lagnese* v. *Waterbury,*, Docket No. 3:15-cv-975 (AWT), 2018 WL 1582546 (D. Conn. March 30, 2018), the plaintiff claimed that § 22-358 (c) was unconstitutional both on its face and as applied because, in part, "the [c]ommissioner . . . has never promulgated any rules, policies, procedures, guidelines, practices or regulations regarding the enforcement" of the statute. Id., *1. In dismissing the plaintiff's claims, the United States District Court for the District of Connecticut determined that "the statute provides clear guidance to animal control officers that orders concerning restraint or disposal of a dog can only be made with respect to a biting dog, and it is clear from the statute that the animal control officers must exercise their discretion in determining whether no enforcement, a restraint order, or a disposal order is most appropriate. It should be noted that the exercise of discretion contemplated in [§] 22-358 (c) should not be viewed in isolation but in the context of the entire statute. . . . The plaintiffs have not shown how requiring animal control officers . . . to exercise their discretion and judgment in making a decision as to what type of enforcement, if any, is appropriate does more to authorize or encourage arbitrary or discriminatory enforcement than various other laws that must be enforced by individuals performing a discretionary function . . . ." (Citation omitted; internal quotation marks omitted.) Id., *3–4.

The plaintiff makes much of the word "necessary" in the statute. We are not persuaded that the lack of an explicit definition of the word renders the statute void for vagueness.[4] See, e.g., *State ex rel. Gregan* v. *Koczur*, supra, 287 Conn. 157 (concluding that General Statutes § 22-329a is not void for vagueness despite its failure to define "neglect"). This statute gives a person of ordinary intelligence a reasonable opportunity to know what is prohibited and provides sufficient notice that animal control officers are granted the discretion to decide what enforcement is necessary to protect the public in the case of a biting dog. Furthermore, the statute uniformly and consistently has been adjudicated to be clear and constitutional, including under the same facts in the present appeal. See *Kiyak* v. *Fairfield*, supra, United States District Court, Docket No. 3:17-cv-01426 (AWT). We conclude, therefore, that the statute is not unconstitutionally vague.

II

The plaintiff next claims that the hearing officer violated his right to procedural due process by using inadequate procedures in upholding the disposal orders. Specifically, the plaintiff claims that "[i]nadequate procedures were used in issuing and upholding the disposal order" because "the hearing officer adhered to

no known rules, regulations, standards, or procedures in determining that the order was necessary." (Internal quotation marks omitted.) Thus, the plaintiff contends that this court must decide what process is due by applying the three balancing factors outlined in *Mathews* v. *Eldridge*, 424 U.S. 319, 335, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976), which are: (1) the private interests at stake, (2) the risk of erroneous deprivation of that interest through the procedures used and the probable value, if any, of alternative procedures, and (3) the government's interest, including the possible burdens of alternative procedures. The Superior Court concluded, however, that "[a]pplying the *Mathews* factors to the evidence in this case[5] . . . the plaintiff's procedural due process claim fails." (Footnote added.) We agree with the Superior Court.

"We resolve due process claims pursuant to *Mathews* v. *Eldridge*, [supra, 424 U.S. 334–35] . . . . Due process . . . is not a technical conception with a fixed content unrelated to time, place and circumstances. . . . Rather, the [s]pecific dictates of due process generally require consideration of three distinct factors . . . the private interest . . . the risk of erroneous deprivation . . . and . . . the [state's] interest . . . [in] the additional or substitute procedural requirement[s] . . . ." (Internal quotation marks omitted.) *State* v. *Michael F.*, 208 Conn. App. 663, 674–75,     A.3d     (2021).

First, the plaintiff's private interest in the possession of his dog is outweighed by the long-standing recognition that dogs that cause harm are subject to the police power of the state. See *Sentell* v. *New Orleans & Carrollton Railroad Co.*, supra, 166 U.S. 704–705. Our legislature has granted animal control officers the discretion to make orders with respect to the restraint or disposal of a biting dog. It is undisputed in the present case that the plaintiff's dog has bitten several people. Second, the administrative appeal procedures provided to the plaintiff pursuant to the UAPA afforded him an adequate opportunity to challenge the animal control officer's orders.[6] Finally, we agree with the court that "[t]o impose on the department an obligation to provide a probable cause hearing . . . would be unduly burdensome because it would require essentially duplicate proceedings." On the basis of our review of the record, we agree with the court's analysis of the *Mathews* factors and conclude that there is no due process violation.

### III

Finally, the plaintiff claims that the hearing officer erred in designating Miller as an expert witness. Specifically, the plaintiff claims that "it is unclear whether the facts of Miller's experience, employment and education[al] history support his designation as an expert." With respect to this claim, the court ruled that the hearing officer did not abuse his discretion in admitting

and considering Miller's expert opinion as to Jack's temperament. We agree with the court.

Administrative hearing officers have the same discretion as any other trier of fact to determine the admissibility and credibility of expert testimony. See *Goldstar Medical Services, Inc.* v. *Dept. of Social Services*, 288 Conn. 790, 830, 955 A.2d 15 (2008). "[I]t is axiomatic that the determination of whether a witness is qualified to testify as an expert is an evidentiary matter . . . which rests in the discretion of the trial court." *Glaser* v. *Pullman & Comley, LLC*, 88 Conn. App. 615, 621, 871 A.2d 392 (2005).

"[Our Supreme Court has] previously stated that administrative tribunals are not strictly bound by the rules of evidence . . . . It is axiomatic . . . that it is within the province of the administrative hearing officer to determine whether evidence is reliable . . . and, on appeal, the plaintiff bears the burden of proving that the commissioner, on the facts before him, acted contrary to law and in abuse of his discretion . . . ." (Citations omitted; internal quotation marks omitted.) *Do* v. *Commissioner of Motor Vehicles*, 330 Conn. 651, 667–68, 200 A.3d 681 (2019).

"In order to reverse an agency decision on the basis of an erroneous evidentiary ruling, it is necessary that the appellant demonstrate that substantial rights of [his] have been prejudiced because the administrative findings, inferences, conclusions, or decisions are . . . clearly erroneous in view of the reliable, probative, and substantial evidence in the whole record. . . . [T]he plaintiff bears the burden of demonstrating that a hearing officer's evidentiary ruling is arbitrary, illegal or an abuse of discretion." (Citation omitted; internal quotation marks omitted.) *Recycling, Inc.* v. *Commissioner of Energy & Environmental Protection*, 179 Conn. App. 127, 153–54, 178 A.3d 1043 (2018).

A witness may be qualified as an expert on the basis of knowledge, skill, experience, training, education, or otherwise. Conn. Code Evid. § 7-2. The legislature has established training requirements for animal control officers that include eighty or more hours of instruction. See General Statutes § 22-328. Miller has been a certified animal control officer since 1998, and his extensive experience and training support the hearing officer's decision to "[admit] and [consider] Miller's expert opinion as to Jack's temperament." Given Miller's knowledge, education, and experience in his position as an animal control officer, we conclude that the hearing officer did not abuse his discretion by admitting and considering Miller's expert testimony.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The town has adopted in full the department's brief to this court.

[2] On appeal, the plaintiff raises a number of claims for the first time. First, the plaintiff asserts that the hearing officer's decision to uphold the disposal

order was arbitrary, capricious, and unreasonable. Second, the plaintiff claims that the animal control officer's failure to weigh alternatives in issuing the disposal orders violated his right to procedural due process. Finally, the plaintiff contends that § 22-358 (c) is an unconstitutionally overbroad delegation of legislative authority.

"We have repeatedly held that this court will not consider claimed errors . . . unless it appears on the record that the question was distinctly raised at trial and was ruled upon and decided by the court adversely to the appellant's claim." (Internal quotation marks omitted.) *Robinson* v. *Tindill*, 208 Conn. App. 255, 269,      A.3d     , cert. denied, 340 Conn. 917,      A.3d      (2021). On the basis of our review of the record, we conclude that each of these claims were not properly preserved before the hearing officer or the Superior Court, and we decline to review them.

[3] See *Lagnese* v. *Waterbury*, Docket No. 3:15-cv-975 (AWT), 2018 WL 1582546, *3 (D. Conn. March 30, 2018). The plaintiff's appellate counsel previously has brought a number of cases making claims that attack the validity of § 22-358 (c), including *Speer* v. *Dept. of Agriculture*, 183 Conn. App. 298, 192 A.3d 489 (2019), *Kiyak* v. *Fairfield*, United States District Court, Docket No. 3:17-cv-01426 (D. Conn. June 28, 2019), *Lagnese* v. *Waterbury*, supra, 2018 WL 1582546, and *Wanzer* v. *Plainville*, United States District Court, Docket No. 3:15-cv-16 (AWT) (D. Conn. March 28, 2018). In *Kiyak*, *Lagnese* and *Wanzer*, the plaintiffs' claims failed on the merits.

[4] See *State* v. *Legrand*, 129 Conn. App. 239, 269–70, 20 A.3d 52 ("[W]e are mindful that [a] statute is not void for vagueness unless it clearly and unequivocally is unconstitutional, making every presumption in favor of its validity. . . . [T]he void for vagueness doctrine embodies two central precepts: the right to fair warning of the effect of a governing statute . . . and the guarantee against standardless law enforcement. . . . If the meaning of a statute can be fairly ascertained a statute will not be void for vagueness . . . ." (Internal quotation marks omitted.)), cert. denied, 302 Conn. 912, 27 A.3d 371 (2011).

[5] The plaintiff neither cited nor analyzed the *Mathews* factors in his brief to the Superior Court. In response to the defendants' arguments, however, the Superior Court succinctly addressed the *Mathews* factors in its memorandum of decision.

[6] Our Supreme Court has held that "the procedures required by the UAPA exceed the minimal procedural safeguards mandated by the due process clause." (Internal quotation marks omitted.) *Pet* v. *Dept. of Health Services*, 228 Conn. 651, 661, 638 A.2d 6 (1994).